IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| FRANCISCO JAVIER RIVERA | § | |
| VS. | § | CIVIL ACTION NO. 1:21-CV-382 |
| KEVIN SMITH, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Francisco Javier Rivera, a prisoner previously confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Kevin Smith and Rochelle Rogers.[1] Defendant Smith was the Warden of the Stiles Unit, and Defendant Rogers was the Safe Prisons Coordinator at the Stiles Unit.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Plaintiff has been diagnosed with multiple sclerosis and gender dysphoria. Plaintiff was prescribed injections, which were administered three times each week, to treat multiple sclerosis. Plaintiff also received injections every two weeks for gender dysphoria. Initially, Plaintiff had a medical pass to go back and forth to the Stiles Unit infirmary for the injections. On April 13, 2020,

---

[1] Plaintiff also identified Lois Torvar, a nurse, as a defendant in the Original Complaint. The Office of the Attorney General (OAG) advised the court that there is no record of an employee named Lois Torvar, and the OAG was unable to identify the individual referred to in Plaintiff's Complaint. Plaintiff did not identify Lois Torvar in the Amended Complaint (doc. #33), which is the live pleading in this case. Plaintiff subsequently notified the court that the correct name of the Defendant referred to as Lois Torvar in the Original Complaint is Ricky Tarver. There are no factual allegations concerning either Lois Torvar or Ricky Tarver in Plaintiff's Amended Complaint. Therefore, Plaintiff has effectively dismissed any claims against Ricky Tarver.

Plaintiff was sexually assaulted. After the sexual assault, Plaintiff was assigned to transient status in the administrative segregation building for protection while prison officials conducted an Offender Protection Investigation.

Offenders housed in administrative segregation must be escorted to medical appointments by correctional officers. The correctional officers assigned to administrative segregation frequently failed to escort Plaintiff to the medical department for the injections, although other prisoners in administrative segregation were escorted to their medical appointments. As a result, Plaintiff missed 100 out of 120 injections between April and September of 2020, and suffered serious complications from being deprived of the medications. Plaintiff allegedly notified Defendant Rogers, the Stiles Unit Safe Prisons Coordinator, about the missed appointments on three occasions. Defendant Rogers allegedly told Plaintiff that she would fix the problem, but she did not. Plaintiff also notified Defendant Smith, the Stiles Unit Warden, about the missed appointments, but he also failed to correct the problem.

### Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to summary judgment because Plaintiff did not exhaust administrative remedies before filing this lawsuit.

### Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 427 (5th

Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

<u>Analysis</u>

Title 42 U.S.C. § 1997e(a) requires prisoners to exhaust administrative remedies before filing a civil rights action. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The statute provides, "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and is intended to give correctional officials an opportunity to address complaints internally before initiation of a federal suit. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes. *Id.* at 532. Prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Because exhaustion is a threshold issue, the district court may resolve factual disputes concerning exhaustion without a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The primary purpose of a grievance is to alert prison officials to a problem so that it can be addressed, not to provide notice to a prison employee of a possible lawsuit. *Johnson*, 385 F.3d at 522. Thus, it is not necessary for a prisoner to identify future defendants by name in the grievance in every circumstance. *Id*. at 517. Nor is it necessary for an inmate to allege a legal theory or every fact that would support a legal theory in his grievance. *Id.* at 517-18. "A grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id*. at 517.

"The Texas prison grievance process is straightforward." *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). The Texas Department of Criminal Justice, Correctional Institutions Division has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). The prisoner must pursue the grievance through both steps for his claim to be exhausted. *Johnson*, 385 F.3d at 515. A prisoner does not exhaust administrative remedies by simply filing each step without regard for procedural requirements. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). There are no special circumstances that would excuse a prisoner's failure to comply with the applicable deadlines and other procedural rules. *Ramirez*, 595 U.S. at 421; *see e.g. Gonzalez v. Resendez*, No. 22-40597, 2023 WL 5346061, at *1 (5th Cir. Aug. 18, 2023) (unpublished) (finding that a claim raised for the first time in a Step 2 grievance was unexhausted because the plaintiff failed to file procedural rules); *Simons v. Davis*, No. 20-40570, 2022 WL 3226619, at *2 (5th Cir. Aug. 10, 2022) (unpublished) (Texas prisoner did not exhaust administrative remedies because he failed to file a Step 1 grievance within the 15-day time limit).

On April 22, 2020, Plaintiff filed a Step 1 grievance (#2020110764) reporting the rape. (Doc. #68-1 at 155-56.) In response, Plaintiff was advised that an Offender Protection Investigation was initiated and Plaintiff had been granted a unit transfer. (Doc. #68-1 at 156.) In a Step 2 grievance, Plaintiff reported dissatisfaction with the Step 1 response because "I am still at the Mark Stiles Unit it's [sic] been almost two months since I cried out for help" and stated that the situation was worse due to the missed injections for multiple sclerosis and hormone treatments. (Doc. #68-1 at 153.)

On May 8, 2020, Plaintiff filed a Step 1 (#2020119291) grievance alleging that members of the medical staff refused to administer the prescribed injections for multiple sclerosis because Petitioner did not arrive at the clinic precisely at 10:00 a.m., and that "Nurse Tarvar" was deliberately denying the injections to discriminate against Plaintiff for being transgender. (Doc. #68-1 at 21-22.) Following an investigation, Plaintiff received a response that changes were being made to ensure the injections were administered as prescribed. (Doc. #68-1 at 22, 24-29.) Plaintiff filed a Step 2 grievance about the missed injections. In addition, Plaintiff claimed for the first time, that Defendants Smith and Rogers had been made aware that correctional officers were ignoring Plaintiff's requests to be escorted to the infirmary for injections. (Doc. #68-1 at 175-76.) The Grievance Investigation Worksheet reflects that the only issue addressed at the Step 2 level was the subject matter of the Step 1 grievance–that a nurse was purposely denying Plaintiff medical injections. (Doc. #68-1 at 191.)

Nothing in grievance #2020110764 at either the Step 1 or Step 2 level would alert prison officials that individuals in a supervisory position had been made aware that Plaintiff was missing injections, but failed to take action. Therefore, the grievance did not give prison officials a fair opportunity to address the issues that form the basis of the lawsuit. Plaintiff's Step 1 grievance

5

#2020119291 was filed shortly after Plaintiff began to miss the injections, and it did not mention any attempts to correct the situation by contacting either of the defendants or any other supervisory officials. That claim was raised only in the Step 2 grievance, but it was not addressed by prison officials because it was not raised in a procedurally-correct manner. Plaintiff's claim that Defendants Smith and Rogers ignored the complaints about missed injections is unexhausted because Plaintiff did not follow TDCJ procedures limiting grievances to one issue, and it is clear that prison officials did not address the merits of that claim when responding to Plaintiff's Step 2 grievance. *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (noting that TDCJ rules permit only one issue to be raised in a grievance). There is no genuine dispute of material fact regarding the exhaustion of Plaintiff's claim.

## Recommendation

Defendants' motion for summary judgment should be granted, and this action should be dismissed.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by

the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SIGNED this the 3rd day of July, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE